

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ROBERT R. HALE, <br><br> Plaintiffs, <br><br> v. <br><br> ANTON PAAR USA, INC., <br><br> Defendant. | Civil Action Number 3:07CV435 |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment and Motion to Bifurcate Trial. For the reasons expressed below, both Motions are hereby DENIED.

## I. BACKGROUND

Hale alleges that Anton Paar USA, Inc. ("APUSA") discharged him because of his age in willful violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. APUSA hired Hale, who was 60 years of age, as a Laboratory Product Manager on October 2, 2000. As Laboratory Product Manager, Hale was responsible for training and proving technical information to APUSA's sales force, and serving as the primary customer contact for laboratory application oriented questions and technical support. APUSA notified Hale of the termination of his employment on November 1, 2004, when Hale was 64 years old. Hale's last day of employment was December 31, 2004, when Hale was 65 years of age.

APUSA is an Ashland, Virginia corporation that distributes laboratory equipment manufactured by its parent company, Anton Paar GmbH ("APGmbH"), located in Graz, Austria. Niels Hägglund was President and General Manager of APUSA, and enjoyed total control of its

1

operations until APGmbH purchased a controlling interest in APUSA on or about March 2003. In 2003, Hägglund agreed to continue to serve as the President and General Manager of APUSA, but he was required to report directly to Dr. Friedrich Santner. Santner is the General Manager of APGmbH and a Director of APUSA. Therefore, APUSA's Board of Directors during the relevant time frame consisted of Hägglund and Santner.

At the Board of Directors meeting on March 3, 2004, it was determined that Hale would be replaced as Product Manager. On October 8, 2004, the Board determined that Hale would be terminated effective November 12, 2004. When Hägglund notified Hale of his termination, Hale asked whether he could be allowed to remain employed until December 31, 2004 so that his retirement benefits would fully vest. APUSA agreed and, therefore, Hale's last day of employment was December 31, 2004.

Hale states that he submitted a charge of age discrimination to the Virginia Council on Human Rights ("VCHR") on or about March 4, 2005.[1] On September 30, 2006, the Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights ("RTS Letter"). Subsequently, however, the EEOC re-opened the charge and issued a Notice of Reconsideration. Under the reconsideration, the EEOC filed two subsequent RTS Letters, dated March 30, 2007 and April 16, 2007 respectively. On June 27, 2007, Hale filed his Complaint in Henrico County Court.

In its Motion for Summary Judgment, APUSA argues that (1) Plaintiff's claim is procedurally barred because he failed to file suit within 90 days from receipt of the first RTS letter

---

[1] Pursuant to the worksharing agreement between the VCHR and the EEOC, an aggrieved party's filing with one agency "is deemed received by the other." Puryear v. County of Roanoke, 214 F.3d 514, 519 (4th Cir. 2000).

2

issued by the EEOC; (2) Plaintiff has failed to establish a prima facie case of age discrimination under (a) the *McDonnell Douglas* burden-shifting analysis or (b) the mixed-motive framework; and (3) Plaintiff's claim fails as a matter of law because APUSA would have discharged Hale based on performance issues, irrespective of any age discrimination. Each contention is addressed in turn.

## II. DISCUSSION

### A.

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327. The Court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). While viewing the facts in such a manner, courts examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits to determine whether a triable issue exists. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court "may not make credibility determinations or weigh the evidence." Edell & Associates, P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 435 (4th Cir. 2001). "That is, [we] should give credence to the evidence favoring the non-movant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." Id. at 436. (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149-50 (2000)). Thus, summary judgment is only appropriate where

the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

B.

The ADEA prohibits an employer from discharging an employee because of age. See 29 U.S.C. § 623(a)(1). To be successful, an ADEA plaintiff must meet certain procedural requirements prior to filing suit. An aggrieved party must file a charge with the EEOC prior to filing suit. 29 U.S.C. § 626(d). In Virginia, a deferral state, the charge must be filed no later than 300 days "after the alleged unlawful practice occurred. . . ." 29 U.S.C. § 626(d)(2); see also Edelman v. Lynchburg College, 300 F.3d 400, 404 (4th Cir. 2002). Section 626(d) requires the aggrieved party to then wait 60 days before filing suit. However, when the EEOC issues a notice of dismissal informing the party of his right to sue, the aggrieved party is required to bring a civil action within 90 days after the date of receipt of the EEOC's right-to-sue notification. 29 U.S.C. § 626(e).

Here, APUSA contends that because Hale did not file suit within 90 days of receipt of the EEOC's first RTS letter, dated September 30, 2006, Hale's claim is time barred. APUSA relies on the district court's decision in Lewis v. Norfolk Southern Corp., 271 F. Supp. 2d 807 (E.D. Va. 2003) to support its position that the EEOC did not have jurisdiction to reconsider Hale's charge and, therefore, Hale's Complaint was filed untimely because the 90 days began to run after the EEOC issued the first RTS letter. In Lewis, the court held that because Part 1601 of the regulations governs Title VII of the Civil Rights Act of 1964 and the American with Disabilities Act, it does not empower the EEOC to reconsider charges under the ADEA which is governed by Part 1626. Id. at 815. Alternatively, the Lewis court concluded that even if the EEOC could reconsider charges under the ADEA, the regulations under Part 1601 do not empower the EEOC to reconsider a withdrawn

charge. Id.

Without commenting on the merits of the court's holding in Lewis, this case is distinguishable in that Hale did not withdraw his charge. Further, assuming *arguendo* that the EEOC lacked authority to reconsider the charge, the EEOC's error should not be imputed to Hale. See Alsaras v. Dominick's Finer Foods, Inc., 248 F.3d 1156, 2000 WL 1763350, at *2 (7th Cir. 2000) (holding that misleading conduct by the EEOC can be a basis for equitable tolling of the administrative statute of limitations); Coleman v. Talbot County Detention Center, 242 F. App'x 72, 74 (4th Cir. 2007) (finding that equitable tolling was warranted where "the primary fault is that of the EEOC for not -as both counsel and [plaintiff] reasonably expected- sending a copy of the right-to-sue letter to counsel"). Accordingly, the Court finds that Hale's Complaint was filed timely.

C.

An ADEA plaintiff must establish, by a preponderance of the evidence, that "the plaintiff's age . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." Ruff v. Target Stores, Inc., 226 F. App'x 294, 300 (4th Cir. 2007) (quoting Reeves, 530 U.S. at 141) (internal quotations omitted); accord Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004). A plaintiff may prove age discrimination under two alternative methods of proof: (1) a "mixed-motive" established by the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) or (2) a "pretext" framework. Hill, 354 F.3d at 284-85. APUSA argues that Hale cannot establish a prima facie case of age discrimination under either proof method.

1.

The pretext framework employs the *McDonnell Douglas* burden-shifting analysis. Warch

5

v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006). Specifically, a plaintiff is required to show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse action; and (4) the position remained open or he was replaced by a substantially younger individual. Id. Once plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment decision. Id. at 513-14. The employer carries a burden of production, not persuasion, and "it can involve no credibility assessment." Id. (quoting Reeves, 530 U.S. at 142) (internal quotations omitted). Upon meeting this burden, the plaintiff must prove that the proffered justification is pretextual. Id. Plaintiff carries the ultimate burden of persuading the court that he was discriminated against because of his age. Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004).

APUSA argues that Hale cannot establish a prima facie case of age discrimination under the *McDonnell Douglas* framework because (1) Hale was not meeting his employer's legitimate expectations and (2) Hale lacks evidence of pretext. Conversely, Hale argues that APUSA's argument under the *McDonnell Douglas* framework is irrelevant because he offers direct evidence of age discrimination. Because Hale does not plan to use the *McDonnell Douglas* proof method, it is not necessary for the Court to address APUSA's argument under this proof method.

2.

Under a "mixed-motive" proof method, a plaintiff must demonstrate, through direct evidence, that age was a motivating factor in making an adverse employment decision. Hill, 354 F.3d at 284,

285 n.2; see also Baqir v. Principi, 434 F.3d 733, 745 n.13 (4th Cir. 2006).[2] A plaintiff is not required to demonstrate that age was the sole motivating factor as long as it was a motivating factor. Hill, 354 F.3d at 284. Instead, "it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons." Id.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Id. at 286 (quoting Reeves, 530 U.S. at 141) (internal quotations omitted). The plaintiff must produce sufficient evidence that the protected trait "played a role in the employer's decisionmaking process and had a determinative influence on the outcome." Id. Thus, "[a]pplication of the mixed-motive framework requires . . . evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." E.E.O.C. v. Warfield-Rohr Casket Co., Inc., 364 F.3d 160, 163 (4th Cir. 2004).

In the case at bar, Hale has produced Hägglund's affidavit, wherein Hägglund asserts that

> At the board meeting held on October 8, 2004 in Austria, Mr. Santner directed that I terminate Mr. Hale's employment. During that meeting, Santner stated that Mr. Hale was too old and should be retired, and that older employees could not work as hard as younger ones. He added that even though he is only in his 40's, he could not perform as productively as a younger employee. I warned Mr. Santner that the United States has laws prohibiting age discrimination. Nevertheless, he directed that I terminate Mr. Hale's employment. When I asked for a reason, he did not provide an answer.

---

[2]The Fourth Circuit in Baqir held that although Congress through the enactment of the Civil Rights Act of 1991 has made the mixed-motive framework more favorable to Title VII plaintiffs by permitting them to prove discrimination through direct and circumstantial evidence, those changes do not apply to the ADEA. 434 F.3d at 745 n. 13. The Fourth Circuit explained that because Congress did not pass a corresponding amendment to the ADEA when it amended Title VII, "ADEA mixed-motive cases remain subject to the *Price Waterhouse* analysis." Id.

(Hägglund Aff. ¶10-11). The minutes from the Board of Directors meeting held on March 10, 2004 indicate that Hägglund was to investigate "the legality of forcing an employee to retire at age 65." During his deposition, Hägglund testified as follows:

> Q: Okay. Dr. Santner didn't want to fire him [Hale] because of his age. He wanted to fire him because he is difficult to understand?
>
> A: That's not entirely true either. There were many discussions about Bob's age and the age of several people around the company, Mike May being one, that at one meeting Dr. Santner said, Well, how old is Mike May, 60-something? Isn't he sort of keeping this sales management job as just a hobby until he retires? And I said, No, its not the way it's working. And he said, Well, it kind of seems that way to me. And I showed Dr. Santner a document where it said that Mike May was the second leading salesperson that month. And Dr. Santner thought that was very interesting. There were other discussions where Dr. Santner said, you know, I'm only in my mid-40s. I can't do what I used to do either. So age, was most likely, a very strong determinant.

(Hägglund Dep. 172:25-173:17). Hale has also submitted an affidavit from Patricia A. Bradfield, the Office Manager for APUSA from December 1, 1986 through November 9, 2005, who attests as follows:

> Mr. Hägglund told me in 2004 that Friedrich Santner wanted Hägglund to terminate Mr. Hale because of Mr. Hale's age; my best estimate of when Mr. Hägglund first told me this is the first half of 2004. I have known since 2004 that APUSA fired Mr. Hale because of his age, because Mr. Hägglund, when he was President of APUSA, told me that Mr. Hale was being fired because of his age.

(Bradfield Aff. ¶11-12).

APUSA essentially argues that Santner's comments fail to support a direct evidence case because (1) they were lone, isolated comments that were not part of the decision-making process; and (2) they merely conveyed a vague sentiment about generational change. In support of its first contention, APUSA cites Brinkley v. Harbour Recreation Club, 180 F.3d 598 (4th Cir. 1999). In Brinkley, the Fourth Circuit found that the plaintiff had produced a few isolated statements

8

indicating sexist attitudes at her former place of employment, "but utterly fails to connect any of the incidents with her eventual demotion and termination." Id. at 608.

Brinkley is distinguishable from the instant case. APUSA argues that the decision was made at the Board meeting held on March 3, 2004 and the decision was strictly based on Hale's performance. However, the minutes from the March 10, 2004 meeting shows that Hägglund was to investigate "the legality of forcing an employee to retire at age 65." There are emails exchanged between Santner and Hägglund discussing whether Hale can be given notice of termination in July 2004. Additionally, it was determined at the October 8, 2004 Board meeting that Hale's last day would be November 12, 2004. Thus, the record indicates that there was an ongoing discussion about Hale's termination through the October 8, 2004 Board meeting. As such, there is a closer nexus to Santner's comments and the ongoing employment decision to terminate Hale than in Brinkley.

Characterizing Santner's remarks as "general" and a note on "generational change," APUSA also contends that Santner's comments are insufficient, as a matter of law, to sustain a direct evidence claim. APUSA highlights Mereish, where the Fourth Circuit determined that the employer's comments while discussing a reduction in force, "it is the young, bright, junior scientists . . . that I must attempt to protect," were general and ambiguous remarks referring to the process of generational change. 359 F.3d at 336. Therefore, the comments created no triable issue of age discrimination. Id. Accordingly, APUSA argues that because the comment made by Santner in the instant case was less frequent and more remote to the decision-making process than those made in Mereish, the Court should find that they are insufficient to support a direct evidence claim.

However, the Fourth Circuit in Mereish also stated that "when evaluating age animus, we must consider the context in which statements were made." Id. at 337. In the present case, Santner's

9

comments (*e.g.*, "Mr. Hale was too old and should be retired, and that older employees could not work as hard as younger ones") is not general. Instead, it specifically references Hale in the context of making a decision to terminate his employment, and the minutes from the March 10, 2004 Board meeting further support the implication that Hale was terminated because of his age. See Loveless v. John's Ford, Inc., 232 F. App'x 229, 234 (4th Cir. 2007) (holding that there was ample direct evidence to support the jury's verdict that age was a motivating factor in the employer's decision where the employer stated that the employee was being "retired" and that he needed "younger, more aggressive managers, people he [could] groom to the way he does business"). Thus, construing the record in favor of the non-moving party, the Court finds that Hale has presented sufficient direct evidence to withstand summary judgment and there are outstanding issues of material fact for the jury to resolve.

### D.

In addition to allowing plaintiffs to prove mixed-motive by putting forth circumstantial and direct evidence, the Civil Rights Act of 1991 also disallowed employers from escaping liability by proving that they would have made the same decision even without any discrimination. Mereish, 359 F.3d at 339-40 (noting that *Price Waterhouse* no longer applied to Title VII cases). However, as previously noted, the Fourth Circuit held in Baqir that the *Price Waterhouse* analysis is still applicable to ADEA cases. 434 F.3d at 745 n.13. Thus, an employer in an ADEA case may avoid liability by proving that it would have made the same decision without any discrimination. Id. As such, APUSA contends that it would have made the decision to terminate even if, assuming *arguendo*, age was a contributing motive.

While APUSA proffers significant evidence that APUSA would have made the same

decision regardless of any age animus on behalf of Santner,[3] the Court finds that Hale proffers sufficient direct evidence for a rational jury to conclude otherwise. See Loveless, *supra* Part II C. 2. As this Court has previously noted, the issues in this case turn primarily on the credibility of the witnesses and, "[w]here the resolution of the case is likely to turn on the credibility of the witnesses, summary judgment is simply not appropriate." See Afzal v. Atlantic Coast Airlines, Inc., 1999 WL 218727, at *3 (4th Cir.1999) (citing Gray v. Spillman, 925 F.2d 90, 95 (4th Cir.1991)); see also Black & Decker Corp. v. U.S., 436 F.3d 431, 442 (4th Cir. 2006) (concluding that a district court should not have granted summary judgment where a jury needed to weigh expert testimony "because witness credibility cannot be assessed on summary judgment"). Accordingly, summary judgment would be improper.

E.

APUSA moves the Court to bifurcate the trial into two separate stages, one stage to determine liability and the other to determine damages. APUSA presents three arguments for bifurcation. First, it would be more efficient because an initial determination on liability may preclude the need to present complex and extensive damage and mitigation evidence. Second, bifurcation is in the interest of judicial economy because the issues presented in the liability and damages phase would overlap. Finally, bifurcation will avoid undue prejudice because the issue of

---

[3]Particularly, APUSA highlights the following email sent from Santner to Hägglund on July 21, 2004:

> The discussion about Bob Hale is not based on his age but on his ability to do his job. In no case there is any relation to his age at all. The question of age arose at the BOD meeting as you explained to me that the only chance to give notice to an employee of Bobs [sic] age is if there was a company policy of forced retirement at a certain age.

11

damages promises to consume significant time at trial and likely confuse the jury.

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b); see also Vichare v. AMBAC Inc., 106 F.3d 457, 466 -67 (2d Cir. 1996) (noting that "[t]he interests served by bifurcated trials are convenience, negation of prejudice, and judicial efficiency"). The decision to bifurcate a trial is within the broad discretion of the district court. White v. Bloomberg, 501 F.2d 1379, 1385 (4th Cir. 1974) ("We hold that the district courts are free to tailor an appropriate procedure to fit the facts and the pleadings and to select what seems best for a given case."). Because the issues in this case are not overly complex, the Court finds that bifurcation is unwarranted.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

Entered this 17th day of January 2008